**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOMINION BULK CHARTERING LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| AMERICA METALS TRADING LLP, | ) | JUDGE: |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT**

Plaintiff, DOMINION BULK CHARTERING LTD. ("Plaintiff"), by its attorneys, Shari

L. Friedman and Robert L. Reeb of Marwedel, Minichello & Reeb, P.C., for its Verified

Complaint against defendant, AMERICA METALS TRADING LLP ("Defendant"), alleges

upon information and belief as follows:

**Jurisdiction and Venue**

1.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.  The Court has jurisdiction under 28 U.S.C. § 1333 and Supplemental

Rule B for Certain Admiralty and Maritime Claims.  The Court also has subject matter

jurisdiction based on 28 U.S.C. §1331 and 9 U.S.C. §203.

2.      Venue is proper in this District because the Garnishee is located here.

**The Parties**

3.      At all material times, Plaintiff was and now is a foreign corporation organized and

existing under and by virtue of the laws of Liberia with an office and place of business at 80

Broad Street, Monrovia, Liberia.

4.     Upon information and belief, at all material times, Defendant was and still is, a foreign corporation organized and existing under and by virtue of the laws of a foreign country, with an office and place of business at The American House, 81 Fenchurch Street, London EC3M 4BT, United Kingdom.

5.     At all material times, Plaintiff was the disponent owner of the motor vessels CAPETAN MINAS and SWIFT STRONG.

## FACTS

6.     On or about July 18, 2007, Plaintiff, as disponent owner, and Defendant, as charterer, entered into a charter agreement whereby Plaintiff agreed to let, and Defendant agreed to hire, the CAPETAN MINAS to transport a cargo of pig iron ("the Cargo"), under certain terms and conditions, from Rio de Janeiro, Brazil to an unspecified port on the Mississippi River ("the CAPETAN MINAS Charterparty").

7.     Plaintiff duly delivered the CAPETAN MINAS to Defendant pursuant to the terms of the CAPETAN MINAS Charterparty, and the CAPETAN MINAS was directed in September 2007 by Defendant to Rio de Janeiro, Brazil for loading of the Cargo.

8.     Pursuant to Clause 19 of the CAPETAN MINAS Charterparty, Defendant is "ultimately responsible" for damages to the CAPETAN MINAS caused by stevedores during loading and discharge of the Cargo.

9.     On or about September 7, 2007, while the Cargo was being loaded onto the CAPETAN MINAS at Rio de Janeiro, a stevedore negligently operated and mishandled Crane No. 1 of the CAPETAN MINAS thereby causing extensive damage to that crane and to the CAPETAN MINAS.

10.     Despite Plaintiff's best efforts, the stevedores at Rio de Janeiro have denied liability for damage to Crane No. 1 and the CAPETAN MINAS, and have refused to pay for damage arising out of the stevedore's negligent operation and mishandling of Crane No. 1.

11.     The negligent operation, mishandling and subsequent damage to Crane No. 1 and the CAPETAN MINAS, have resulted in losses in the amount of $208,777.18 to repair physical damage caused by the stevedores in Rio de Janeiro.

12.     Claims have been made against Plaintiff by the registered owners of the CAPETAN MINAS for physical damage to Crane No. 1 and to the CAPETAN MINAS as a result of the negligent operation and mishandling of the crane by stevedores in Rio de Janeiro.

13.     Plaintiff has furnished security to the registered owners of the CAPETAN MINAS in respect to the said claim for physical damage, and Plaintiff seeks indemnity from Defendant for all such damages as may be assessed and adjudged against Plaintiff.

14.     As a result of the damage to Crane No. 1 and the CAPETAN MINAS, Plaintiff has also incurred additional costs and disbursements in Rio de Janeiro for which Defendant is ultimately responsible.  These additional costs, which include, but are not limited to, launch rental, watchmen, and agency fees, have resulted in damages to Plaintiff in the amount of $37,027.61, for which Defendant bears ultimate responsibility under the terms of the Charterparty.

15.     Additionally, under the terms of the CAPETAN MINAS Charterparty, Plaintiff is entitled to demurrage at a rate of $40,000.00 per day in the event Defendant exceeds the time allotted for discharge under the CAPETAN MINAS Charterparty.

16.     Defendant exceeded the time allotted under the CAPETAN MINAS Charterparty by 20.9398 days.  Accordingly, after adjustments for dispatch earned by Defendant and funds

received on account, demurrage in the amount of $824,914.33 is currently due and owing from Defendant.

17.     Despite due demand therefore, Defendant has refused to pay the above-listed sums, in the total amount of $1,070,719.12, and this amount is currently due and owing to Plaintiff.

18.     On or about January 29, 2008, Plaintiff, as disponent owner, and Defendant, as charterer, entered into a charter agreement whereby Plaintiff agreed to let, and Defendant agreed to hire, the SWIFT STRONG to transport a cargo of pig iron, under certain terms and conditions, from ports in Brazil to Porto Marghera or Trieste, Italy ("the SWIFT STRONG Charterparty").

19.     Plaintiff has performed all its obligations under the SWIFT STRONG Charterparty.

20.     On or about April 11, 2008, Plaintiff issued a Final Freight Invoice to Defendant reflecting a balance of $55,460.42 due to Plaintiff under the SWIFT STRONG Charterparty.

21.     Defendant has failed and refused to pay the above amount due under the SWIFT STRONG Charterparty, despite due demand therefor.

### Claim for Maritime Attachment and Garnishment

22.     Under the terms of the CAPETAN MINAS and SWIFT STRONG Charterparties, all disputes between the parties are to be decided by arbitration in London, pursuant to English law.  Arbitration has commenced in London and is in the discovery stage.

23.     This action is in aid of said London arbitration proceedings is in accordance with 9 U.S.C. § 8.  Plaintiff seeks to obtain adequate security to satisfy a potential London arbitration award in Plaintiff's favor.

24.     In addition to recovering the principal amount due Plaintiff pursuant to the

Charterparties, Plaintiff also fully anticipates recovering interest, arbitration costs (including

arbitrators' fees), and attorneys' fees, insofar as such costs are routinely awarded to the

prevailing party in London arbitration proceedings.  As best as can now be estimated, Plaintiff

expects to recover the following amounts in the London arbitration:

| | |
|---|---|
| On the principal claims | $1,126,179.54 |
| 3 years (anticipated duration of London arbitration) of interest at 6% per annum, compounded quarterly | $220,301.18 |
| Legal Costs (arbitrators' fees, attorneys' fees, etc.) | $250,000.00 |
| TOTAL | $1,596,480.72 |

25.     Upon information and belief, Defendant cannot be found within this District,

within the meaning of Supplemental Rule B of the Federal Rules Civil Procedure, but is believed

to have or will have during the pendency of this action assets within this District, specifically

including cash, funds, freight, hire, accounts, electronic fund transfers and other property, in the

hands of garnishees in the District including, but not limited to, LaSalle Bank, Bank of America,

JPMorgan Chase co. (Chase Bank), and Citibank, which are believed to be due and owing to the

Defendant.

WHEREFORE, Plaintiff prays:

A.  That process in due form of law according to the practice of this Court in admiralty

and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath

all and singular the matters alleged in the Verified Complaint;

B.  That because the Defendant cannot be found within this District pursuant to Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules and the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all cash, goods, chattels, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including LaSalle Bank, Bank of America, JPMorgan Chase Co. (Chase Bank), and Citibank, which are due and owing to the Defendant, up to the amount of $1,596,480.72 to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B, answer the matters alleged in the Verified Complaint;

C.  That, in accordance with 9 USC § 8, this action be stayed and this Court retain jurisdiction over this matter through the entry of any judgment or award, and any appeals thereof; and

D.  That Plaintiff may have such other, further and different relief as this Court may deem just and proper.

Dated:  February 1, 2010

Respectfully submitted,

DOMINION BULK CHARTERING LTD.


By:_____/s/ Shari L. Friedman_____
        Shari L. Friedman (06193095)
        Robert L. Reeb (06198415)
        Marwedel, Minichello & Reeb, P.C.
        10 S. Riverside Plaza
        Suite 720
        Chicago, Illinois 60606
        (312) 902-1600
        sfriedman@mmr-law.com
        rreeb@mmr-law.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOMINION BULK CHARTERING LTD.,    )
                                 )
          Plaintiff,             )
                                 )
        v.                     )     CASE NO.
                                 )
AMERICA METALS TRADING LLP,     )     JUDGE:
                               )
          Defendant.        )

**VERIFICATION**

Shari L. Friedman, being duly sworn, deposes and says:

1.     I am a member of the bar of this Honorable Court and of the law firm of Marwedel Minichello & Reeb, P.C., attorneys for the Plaintiff.

2.     I have read the foregoing Verified Complaint and I believe the contents thereof are true and correct.

3.     The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.     The sources of my information and belief are information and documents provided to me and statements made to me by agents and representatives of the Plaintiff.

Further Affiant Say Not.

SHARI L. FRIEDMAN

Subscribed and sworn to before me
this 1st day of February, 2010.

Notary Public

OFFICIAL SEAL
JENNIFER TURNER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/10